TUMUA ANOA`I, Plaintiff,

v.

MICHAEL LIEN SHU LAI, Defendant.

---

MICHAEL LIEN SHU LAI, Plaintiff,

v.

TUMUA ANOA`I and TA`AMUVAIGAFA T. IAKOPO,
Defendants.

High Court of American Samoa
Land and Titles Division

LT No. 02-01
CA No. 48-99

January 15, 2002

Before KRUSE, Chief Justice, LOGOAI, Chief Associate Judge, and SAGAPOLUTELE, Associate Judge.

Counsel: For Tumua Anoa`i, Katopau T. Ainu`u
 For Michael Lien Shu Lai, Jennifer L. Joneson
 For Ta`amuvaigafa T. Iakopo, Asaua Fuimaono

## OPINION AND ORDER CONTINUING PROCEEDINGS AND REMANDING MATTER TO LAND COMMISSION

### Introduction

This matter concerns a small commercial building in Fagatogo, commonly known as the BP Building ("the building"), located on land claimed by the Ta`amuvaigafa ("Ta`amu") family. The building was built by the Burns Philip (South Seas) Co. Ltd. ("BP"), in the early 1950s and it was used as one of BP's merchandizing outlets. At the time, BP had leased the site from the then *sa`o* of the Ta`amu family, Ta`amu Faiumu. The lease term was originally for twenty years but it was subsequently extended in May 1972, for an additional ten years, by Ta`amu Iosefo Elisara. In both instances of lease and renewal, the lease process was handled strictly in accordance with the statute governing the alienation and leasing of native (communal) land, A.S.C.A. §§ 37.0221 *et seq.*, (the "Alienation of Land Act"). That is, the lease agreement was routed through the Land Commission and approved by the Governor.

BP's tenancy finally ended in 1982. In accordance with the terms of the lease, the building became part of the lessor's property. Thereafter, the building remained under the control and direction of the family *sa`o* up until the demise of Ta`amu Iosefa Elisara. Following the death of Ta`amu Iosefa Elisara, the family's *matai* title remained vacant for many years until the succession of defendant Ta`amu Ta`alolo Iakopo in June 1998. In the interim, however, Le`ala Pili ("Le`ala"), a member of the Ta`amu family, took it upon herself to rent the building out to third-parties. She initially let the premises out to Mrs. Nive Reed for an unspecified rent and term, applying the rental proceeds derived from that tenancy to the use of her immediate side of the family; namely, the heirs of Ta`amu Ma`alona.

Le`ala subsequently entered into another lease agreement, again on behalf of "the Ta`amu Ma`alona heirs," with plaintiff/cross-defendant Tumua Anoa`i ("Anoa`i") for a term of 10 years at a monthly rental of $800. This instrument, dated April 25, 1995, was accepted by the Territorial Registrar for recording as a "House Lease," without regard to the requirements of the Alienation of Land Act, as more fully discussed below.

According to Le`ala, she has never received any rents from Anoa`i, but it was also evident that she did not pursue the unpaid rents with any vigor. Anoa`i in turn sublet the building to defendant/cross-claimant Michael Lienshui Lai ("Lai"), a "nonnative." A.S.C.A. § 37.0201(e). This sublease, executed with Lai on June 15, 1996, provided for a term of 5 years with a graduated monthly rental rate of $2,100 during the first year,

$2,200 during the second, and $2,300 for the remaining years.

Shortly after the current Ta`amu took office, he intervened on the family's behalf making a demand upon Lai, who then decided to deal with the Ta`amu family's *matai*. Consequently, Ta`amu, on behalf of the Ta`amu family, and Lai, as "President Evergreen Corporation, Inc.," entered into an entirely separate lease agreement commencing January 1, 1999, for a term of 5 years, at a monthly rental of $2,300.

### Findings and Discussion

The proceedings now before the Court first arose with Anoa`i filing suit against Lai on their sublease agreement. Lai responded with a counterclaim seeking damages against Anoa`i, alleging the latter's failure to renovate the building with rental advances made to him for that purpose. Additionally, Lai filed an interpleader action joining both Anoa`i and Ta`amu. Pending final disposition of the matter, the Court earlier issued an interim order requiring Lai to deposit into registry of the Court the rental proceeds on interpleader.

Le`ala was called by Anoa`i to explain her dealings with the building. She testified that the building was not on Ta`amu land, but on communal land of the Tiumalu family, of which she is also a member. According to her understanding, Ta`amu Ma`alona, who was also a member of the Tiumalu family, dealt with BP not as *sa`o* of the Ta`amu family but as a member of the Tiumalu family. Le`ala thus, somehow, claims entitlement to lease the building on behalf of Ta`amu Ma`alona's immediate descendants.[1]

The evidence, however, quite clearly shows that the former Ta`amu titleholders who dealt with BP were dealing as Ta`amu titleholders rather than as some dubious sort of agent for the Tiumalu family. The alienation process giving rise to the BP's leases, which included proceedings before the Land Commission and approval by the Governor, is conspicuously void of any suggestion whatsoever that the demised premises in question was anything but Ta`amu family property. We further find that the Ta`amu titleholders who dealt with the Land Commission in 1953 and 1972 were Ta`amu Faiumu and Ta`amu Elisara respectively. Also conspicuous over the years to this day is the lack of any objection or adverse claim to the leasehold site from any of the

---

[1] Le`ala's legal theory escapes us. Even if the land is the communal property of the Tiumalu family as claimed, we fail to see how the land could have possibly devolved to the issue of Ta`amu Ma`alona, as the territory's law on descent and distribution does not apply to "communal land." *See* A.S.C.A. § 40.0106 and § 40.0206.

Tiumalu titleholders.

We find that the building is the property of the Ta`amu family.

## A. Le`ala-to-Anoa`i Lease, Anoa`i-to-Lai Sublease

■ It is black letter law that the *sa`o* has *pule* or the authority to make decisions about family lands. *See generally Sagapolutele v. Sagapolutele*, 20 A.S.R.2d 16 (Land & Titles Div. 1991); *Lutu v. Taesaliali`i*, 11 A.S.R.2d 80 (Land & Titles Div. 1989); *Gi v. Temu*, 11 A.S.R.2d 137 (Land & Titles Div, 1989); *Coffin v. Mageo*, 4 A.S.R. 14 (Trial Div. 1970); *Lutu v. Fuimaono*, 4 A.S.R. 450 (Trial Div. 1964); *Tiumalu v. Scanlan*, 4 A.S.R. 194 (Trial Div. 1961). Conversely, an untitled family member has no *pule* or authority to unilaterally deal in family property. *Malaga v. Alaga*, 4 A.S.R. 735, 737 (Trial Div. 1966) ("'Who can act as a matai?' The law in American Samoa is quite clear . . . only a matai has the powers, the authority, the *pule* of the matai"); *Lolo v. Heirs of Sekio*, 4 A.S.R. 477, 481 (Trial Div. 1964) ("[U]nder Samoan custom, family lands are under the jurisdiction of the matai. . . . A young man has no authority to permit strangers to live on communal family lands"). *See also Gi v. Temu*, 11 A.S.R.2d 137, 141 (Land & Titles Div. 1989) ("A unilateral and . . . secret attempt by [a matai] to give his daughter sole authority over family land to the exclusion of his successors in title would seem to have been inconsistent with Samoan tradition, and would certainly have been contrary to statutory law of American Samoa with regard to the alienation of family land").

■ Quite clearly, Le`ala had no authority, cognizable either in law or in custom, to lease out Ta`amu family property to Anoa`i. As she was without right to convey a leasehold estate to Anoa`i, the latter equally had nothing in the way of a leasehold interest to sublet. Moreover, the building, as we have found, is a part of the communal property of Ta`amu family. As such, any lease thereof is subject to the requirements of the Alienation of Land Act, which in pertinent part provides:

> (a) Native [or communal] land may, with the approval of the Governor, be leased to any person for any term not exceeding 55 years for any purpose, except for the working of minerals and cutting timber.
> (b) Provisional agreements for the leasing of native land as provided in subsection (a) may be entered into with the native proprietor or proprietors. Every such provisional agreement, stating in full its terms and conditions, shall be submitted with a plan showing the situation of the land to the Governor for approval, *and it shall have no validity until such approval has been signified in writing.*

A.S.C.A. § 37.0221 (emphasis added).

■ None of the lease instruments presented to the Court are in compliance with statute. The documents pertaining to the lease and sublease involving Anoa`i are not even in contemplation of § 37.0321(b) so as to at least qualify as "provisional agreement[s]" pending gubernatorial approval. That is because the claimed lessor Le`ala does not qualify as a "native proprietor," as that term appears in the enactment. From the cases above discussed, the term "native proprietor" necessarily references in this instance the family *sa`o* or senior *matai* Ta`amu.

■ Even if the building was the separate property of the heirs of Ta`amu Ma`alona, and it is clearly not, we fail to see how calling a lease a "house lease" thereby excludes the transaction from the requirements of the Alienation of Land Act, applicable to native land leases. First, the Alienation of Land Act requires the Land Commission to meet periodically for purposes of "making recommendations respecting the approval or disapproval of instruments affecting . . . *possession of [communal] land.*" A.S.C.A. § 37.0203(b). Leaseholds clearly come within the reach of this enactment. Moreover, the house-lease stratagem too conveniently ignores the reality that the communal land on which a structure is located, is necessarily encumbered. Buildings do not exist in a vacuum, notwithstanding the Separation of Structures From Communal Land Act, A.S.C.A. §§ 37.1501 *et seq.*, (the "Separation Act"). This statute provides a vehicle for treating what would otherwise be *realty* into *personalty* for the sole statutory aim of facilitating secured financing for family members who build on communal land. The Separation Act does not purport to do anything more. It certainly does not attempt to in any way to repeal the mandates of the Alienation of Land Act as it regulates the leasing of native land.[2]

The Separation Act clearly does not facilitate the automatic encumbrance of the situs realty without the agreement of the landowner (that is, the *sa`o* of the landowning family). For instance, a mortgagee who takes a mortgage on a separated structure has, without more, only the salvage value of the separated structure in the event of foreclosure. Nothing more. The mortgagee has no interest in the underlying land without agreement of the landowner (the Samoan family through its *sa`o*) properly transferred in accordance with Land Alienation Act.

---

[2] *Cf. Tiumalu v. Levi*, 4 A.S.R.3d 272, 274 (Land & Titles Div. 2000) ("Lease for buildings or portions of a building . . . are not subject to the requirement that leases of communal land be approved by the Governor").

Similarly with a leasehold situation, it cannot be sensibly suggested that the lease of a separated house or building does not involve the situs realty. To the contrary, the lease of a house or building also inextricably involves the transfer of "possession," A.S.C.A. § 37.0203(c), of the situs realty. This hard and fast reality simply cannot be blissfully ignored on some vague assumption that the Separation Act has somehow otherwise adjusted property rights.

Moreover, the functionality of any house or building is meaningful only in context that include such real property incidents such as rights of ingress/egress and access to a certain curtilage area for parking and other attendant needs. Again, buildings do not exist in a vacuum, and there is absolutely nothing in the Separation Act that remotely suggests that these sort of rights are part and parcel of the fictional statutory state of separation.

■■■■■■ Furthermore, and from a policy[3] point of view, it does not take too much imagination to picture the sort of mischief potential with the "house-lease" ruse. Among other things, this stratagem is anti-*fa`a Samoa*. It is in derogation of Samoan custom that recognizes that an untitled person does not have the right to permit strangers to live on communal land. *Heirs of Sekio*, 4 A.S.R. at 481. It thus has the potential for eroding the notion of *matai pule*, and hence a "cornerstone" of the *fa`a Samoa* (the Samoan way of life). *Fairholt v. Aulava*, 1 A.S.R.2d 73, 78 (Land & Titles Div. 1983) ("The Samoan way of life has twin cornerstones, the matai system and communal land tenure"). It opens the door to the extended encumbrance of communal lands (situs realty) to the exclusion of the *matai* and family. The Alienation of Land Act limits the leasing of communal land to terms not exceeding 55 years. A.S.C.A. § 37.0221(a). If these limits are not applicable to a "house-lease," such would appear to be without any limits as to term. Additionally, the house-lease ruse would open the door to communal property dealings

---

[3] AM. SAMOA REV. CONST. art. 1, § 3 provides:

It shall be the policy of the Government of American Samoa to protect persons of Samoan ancestry against alienation of their lands and the destruction of the Samoan way of life and language, contrary to their best interests. Such legislation as may be necessary may be enacted to protect the lands, customs, culture, and traditional Samoan family organization of persons of Samoan ancestry, and to encourage business enterprises by such persons. No change in the law respecting the alienation or transfer of land or any interest therein shall be effective unless the same be approved by two successive legislatures by a two-thirds vote of the entire membership of each house and by the Governor.

which bypass legislative policy regulating the leasing of communal property, *see* A.S.C.A. § 37.0221, and it would open the door for unsupervised "improvident" communal land dealings, A.S.C.A. § 37.0203(c).[4]

### B. Ta`amuvaigafa-to-Lai Lease

 With respect to the Ta`amu and Lai lease, this instrument, although seemingly dated—it was executed February 22, 1999—qualifies as a "provisional agreement" pending gubernatorial approval in contemplation of the Alienation of Land Act, A.S.C.A. § 37.0221(b). The evidence shows that the contracting parties, Ta`amu and Lai with capacity to enter into a lease of communal land submitted their concluded, but provisional, lease agreement, together with a plan of the demised premises as required by § 37.0221(b), to the Land Commission for approval processing in accordance with the requirements of § 37.0203(b). Notwithstanding this statutory mandate, the Land Commission inexplicably altered the whole statutory process by withholding the parties' leasehold instrument from the Governor solely on the unelaborated observation that the "Taamuvaigafa matter is being removed because this is a *house lease.*" (*See* Land Comm'n Minutes, Feb. 18, 2000.) This exceptionary treatment appears even less merited given the actual terms of the proposed lease agreement which refer to the demised premises as "that pieces (sic) of *land* situated in the village of Fagatogo," followed by a detailed description of that land in metes and bounds. The Land Commission thus committed gross error with its apparent theory that *land is not land if you call it something else.* We remind the Land Commission of the civil penalties that flow from any violations of Chapter 02, of Title 37 (*see* A.S.C.A. § 37.0230[5]), which apply equally to private individuals and public officials whose acts thwart the Governor's statutory duties.

### Conclusions

### A. Le`ala-to-Anoa`i Lease, Anoa`i-to-Lai Sublease

---

[4] This enactment charges the Land Commission with the duty of preventing the "improvident alienation" of communal lands. It goes without saying that the provision in the Ta`amu-to-BP lease that kept the building part of the lessor's property upon the expiration of the lease, was a critical term of the lease that would have featured in the Land Commission's favorable deliberations and the Governor's approval.

[5] This enactment in pertinent part provides that "any person committing, or attempting to commit, a breach of a provision of [Title 37] [] chapter [02] . . . shall be liable to a fine not to exceed $200."

██ We conclude that the Anoa`i lease and sublease are nullities, being in violation of Alienation of Land Act, A.S.C.A. § 37.0221(b), and being nullities concluded between competent contracting parties, neither can be heard to complain. Anoa`i having had nothing to lease to Lai, he has no claim upon which relief can be based and his complaint should, therefore, be dismissed. Equally, Lai's counterclaim against Anoa`i must also be dismissed. As a nonnative failing to comply with the mandatory provisions Alienation of Land Act, he is without a remedy. Specifically, A.S.C.A. § 37.0230 provides in pertinent part provides:

> [A]ny nonnative failing to conform to [Title 37] [] chapter [02] . . . shall be liable to the forfeiture to the owner of land, of all improvements he may have erected or made on the land and *no action shall lie for recovery of any payment he may have made or other expenditure he may have incurred in respect thereof.*

Emphasis added.

B. Ta`amuvaigafa-to-Lai Lease

██ We conclude on Lai's interpleader action that Ta`amu, on behalf of the Ta`amu family, has clearly shown superior rights to the land, and hence the building, over Anoa`i's claim. We note, however, from the Land Commission's file on the Ta`amu and Lai proposed lease, in evidence as Ex. "8," that there were a number of objections lodged with the Land Commission, besides Anoa`i's. While Anoa`i has had his day in court, it is not clear to us on the record before us that the other objectors have. Presumably with the tact taken by the Land Commission to avoid meeting on the merits of the Ta`amu and Lai proposed lease, the claims of the other objectors, if not voluntarily withdrawn, still remain pending. Without any of the other objectors before us, full and final relief sought here by Lai's interpleader action is not available at this time. In aid of our jurisdiction, this matter should be continued. We invoke the procedural flexibility permitted the Land and Titles Division by A.S.C.A. § 3.0242(b), and find it "most consistent with natural justice and convenience," to continue and remand to the Land Commission.

### Order

For reasons given, and in aid of our jurisdiction in this matter, the following orders are entered:

1) Anoa`i's complaint against Lai on the sublease is dismissed and Anoa`i shall take nothing thereby.

2) Lai's cross-complaint against Anoa`i on the sublease is dismissed and

305

Lai shall take nothing thereby.

3. The Ta`amu/Lai proposed lease is remanded to the Land Commission and Governor for approval processing in accordance with the requirements of Land Alienation Act.

4. This matter is continued *sine die* pending proceedings before the Land Commission and Governor.

It is so ordered.